UNITED STATES of America,
Plaintiff–Appellee,

v.

REAL PROPERTY LOCATED AT 10936 OAK RUN CIRCLE, MORENO VALLEY, CALIFORNIA, Defendant.

Ruben Alexander and Grace Alexander, Claimants–Appellants.

No. 92–55303.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1993.

Decided Nov. 9, 1993.

David M. Dudley, and Peter Mavrick, Los Angeles, CA, for claimants-appellants.

Lee S. Arian, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FERNANDEZ, NOONAN, and KLEINFELD, Circuit Judges.

NOONAN, Circuit Judge:

Ruben Alexander and Grace Alexander (the Alexanders) appeal the order of forfeiture of the defendant real property at 10936

Oak Run Circle, Moreno Valley, California (the property). The United States obtained a judgment of forfeiture under 21 U.S.C. § 881 by means of summary judgment. The basis for that judgment has been overruled by a decision of the United States Supreme Court, *United States v. 92 Buena Vista Avenue,* —— U.S. ——, ——, 113 S.Ct. 1126, 1134, 122 L.Ed.2d 469 (1993). As the number of forfeitures sought by the government has multiplied and as judicial guidance in this area seems needed, particularly for claimants, *see* David Smith, *Prosecution and Defense of Forfeiture Cases,* § 10.06 (1993), we publish this opinion.

## FACTS

On July 3, 1990 the United States filed a complaint seeking forfeiture of the property, asserting that it had been purchased on January 5, 1987 by Eddie Edwards. Edwards was identified as "a high-ranking member of the Patrick Johnson organization," a major cocaine and PCP distribution system. Edwards was asserted to have no legitimate source of income and to have made all the payments on the property from the sale of narcotics. Since June 22, 1990 Edwards has been a fugitive from justice. Accordingly, the government sought to seize the property under the provisions of 21 U.S.C. § 881(a)(6). On July 17, 1990, the government recorded its lis pendens on the property.

According to the Alexanders, they moved into the property on July 19, 1990. They were present when the government on July 20 served the warrant on the property. On August 8, they asserted a claim to the property as innocent owners.

According to their affidavits, the Alexanders had no knowledge of Edwards' drug activities and did not know that the property was purchased with drug proceeds. Edwards was romantically involved with their daughter and they had allegedly loaned him $6,000 and forgiven a debt of $5,000. On May 18, 1990, their affidavits asserted, they agreed to cancel this debt of $11,000 and to assume the mortgage and other payments due on the property in exchange for Edwards' transferring the property to them. On August 6, 1990 Edwards executed a deed

to the property in their favor. The deed was recorded on August 8, 1990, the day the Alexanders filed their claim in this suit.

It is not contradicted that the property is worth at least $190,000 with an outstanding mortgage of $102,000. The lienholder's interest is not at issue.

## PROCEEDINGS

On the government's motion for summary judgment, the district court declined to apply the government's theory that Edwards never had title to convey because the property vested in the United States "upon commission of the act giving rise to forfeiture." 21 U.S.C. § 881(h). The district court, however, did grant summary judgment on the following basis which the court set out orally to counsel for the Alexanders.

Here's where your clients lose. The deed to this property was obtained and recorded some two months after the property was seized and Mr. Edwards became a fugitive. If the deed to the property had been obtained and recorded prior to the time that Mr. Edwards became a fugitive, then the summary judgment would have been denied.

But all of this was after the fact; after the seizure, after the criminal indictment and after Mr. Edwards became a fugitive that your clients were trying to perfect this interest. They cannot step into the shoes of a bona fide purchaser once Mr. Edwards became a fugitive.

The Alexanders appeal.

## ANALYSIS

The statute provides that "no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6). The statute has recently been interpreted by a divided Supreme Court. *United States v. 92 Buena Vista Ave.,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).

The statute and its exegesis in *92 Buena Vista Ave* present a puzzle. Read literally, the statute appears to be addressed primarily to the situation where unbeknownst to the owner of the property his tenant is using it to make or sell drugs. In *92 Buena Vista Ave* it was held applicable on behalf of a drug dealer's mistress who received from him $240,000 to buy her house and who swore she had no knowledge of how the money had been made. The Court held that it was irrelevant that she was not a purchaser but a donee. The Court noted that the term "owner" was thrice used in the statute and each time was unqualified. *Id.* —— U.S. at ——, 113 S.Ct. at 1134. Hence it was wrong to limit the statute's protection to "bona fide purchasers." *Id.* At the same time the Court glossed the unqualified term "owner" with a nonstatutory term, "innocent." The Court affirmed the court of appeals' remand to the district court "to determine whether respondent was, in fact, an innocent owner." *Id.* —— U.S. at ——, 113 S.Ct. at 1131.

In the course of its opinion the Court considered another section of the forfeiture statute providing that title to such forfeitable property "shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). Observing that literal application of this provision would make the innocent owner defense "meaningless," *id.* —— U.S. at ——, 113 S.Ct. at 1135, the Court declined to read this section literally and in isolation from § 881(a)(6). The Court also suggested that there might be a place for equitable considerations, saying that it did not decide whether "equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property." *Id.* —— U.S. at ——, 113 S.Ct. at 1137.

 The puzzle is the meaning to be attached to the addition to "owner" of the nonstatutory term "innocent" and the weight to be given "equitable doctrines" not incorporated in the statute. We interpret the action of the Court approving the remand to the district court to determine if the respondent had "guilty knowledge" to mean that, as now interpreted, the statute bars an owner with knowledge of the origin of the property in drug proceeds from asserting "the innocent owner defense." We hold, further, that innocence is incompatible with knowledge that puts the owner on notice that he should inquire further.

In the instant case the Alexanders were offered what appears to have been a remarkable bargain. Should they have asked why? Did they ask why? What answers were they given? These and any other factual questions must be resolved in the district court, whose task it will be to determine the credibility of the evidence and explanations tendered by the Alexanders. Under the statute the burden is on them to "establish" their innocence.

Accordingly, the judgment of forfeiture is VACATED and the case REMANDED.